Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000705
12-APR-2019
08:21 AM

NO. CAAP-18-0000705

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF EA

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 16-00187)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Reifurth and Chan, JJ.)

Mother-Appellant (Mother) appeals from an August 30, 2018 Order Terminating Parental Rights (TPR Order), in which the Family Court of the First Circuit (alternatively referred to herein as First Circuit Family Court and family court)[1] terminated her parental rights to her child, EA.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's points of error as follows.

This case was initiated within the jurisdiction of the Family Court of the Third Circuit (alternatively referred to herein as Third Circuit Family Court and family court), when Appellee Department of Human Services (DHS) received a report alleging sexual abuse of EA's half-sister, TM, by TM's step-

---

[1] The Honorable Bode A. Uale presided over the termination of parental rights hearing and issued the TPR Order and corresponding October 4, 2018 Findings of Fact and Conclusions of Law (FOF/COL).

father and EA's biological father, Father-Appellee (Father).[2] The family court adjudicated a Petition for Family Supervision (Petition) filed by DHS, invoked jurisdiction over the family, awarded Family Supervision of EA to DHS, and ordered a service plan. On August 23, 2016, the family court awarded DHS foster custody of EA.

On September 30, 2016, venue was transferred to the First Circuit Family Court, where, on January 25, 2018, DHS filed a Motion to Terminate Parental Rights (MTPR). On June 14, 2018, in a separate criminal case, Father pled no contest to sexual assault of TM in the third degree, and on August 9, 2018, he was sentenced to incarceration for an indeterminate period of five years with credit for time served. On August 30, 2018, after a hearing on the MTPR, the family court granted the MTPR and ordered the Permanent Plan, dated January 18, 2018, the ultimate goal of which was adoption of EA by EA's Paternal Grandmother and Paternal Grandmother's husband (collectively, Paternal Grandparents).

### A. Mother has not demonstrated the FOFs she contests are clearly erroneous.

Mother contests various Findings of Fact (FOFs) 47, 53, 55, 62, 67, and 71 in the FOF/COL but provides no discernible argument with regard to them, and the issues are waived. See Hawai'i Rules of Appellate Procedure Rule 28(b)(4) and (7). Regardless, two of the FOFs Mother contests, FOFs 47[3] and 71,[4] reflect the First Circuit Family Court's credibility determinations and FOF 47 reflects the family court's reasonable inferences. See In re Doe, 107 Hawai'i 12, 19, 108 P.3d 966, 973 (2005) ("The appellate courts will give due deference to the

---

[2] Father does not appeal the TPR Order.

[3] FOF 47 provides:

> Based on the credible testimony of the DHS social worker Alisa Imakyure [(Imakyure)], the unauthorized contacts that Mother allowed Father to have in this case 1) evidences Mother's continued denial of the harm in this case; and 2) demonstrates Mother's inability to be protective of [EA].

[4] FOF 71 provides, "Mother was not a credible witness."

right of the trier of fact to determine credibility, weigh the evidence, and draw reasonable inferences from the evidence adduced." (internal quotation marks and citation omitted)).

B.    Sufficient evidence supports the conclusion that Mother was unable and unwilling to provide EA with a safe family home.

Mother argues the First Circuit Family Court wrongly terminated her parental rights based on a clearly erroneous determination that she was unwilling and unable to provide EA with a safe family home.  She asserts there was no risk that Father would sexually harm EA at the time of the MTPR hearing because Father had been sentenced to an open, five-year term of imprisonment and was incarcerated, and because Mother was a non-offending parent, her failure to complete services did not make her non-protective of EA while Father was in prison.  Apparently related to this argument is Mother's contention that FOFs 54[5] and 63[6] are clearly erroneous.  FOF 66[7] and Conclusion of Law (COL) 7[8] are directly related to this argument.

At the MTPR hearing, EA's sex-abuse therapist, Dawn Tawata (Tawata), and DHS Social Worker Imakyure testified EA could be harmed both while Father was incarcerated and when he was released from prison due to Parents' failure to address the safety concerns created when Father sexually assaulted TM.  For instance, Father could engage in "grooming" behavior if EA were

_____

[5]  FOF 54 provides, "[Mother and Father, collectively, Parents] are not presently willing and able to provide [EA] with a safe family home, even with the assistance of a service plan."

[6]  FOF 63 provides:

> Under the circumstances presented by the instant case, the DHS has exerted reasonable and active efforts to reunify [EA] with [Parents] by identifying necessary, appropriate, and reasonable services to address the identified safety issues, and making appropriate and timely referrals for these services.

[7]  FOF 66 provides, "Each of the service plans offered by the DHS and ordered by the [Third Circuit Family Court and First Circuit Family Court] was fair, appropriate, and comprehensive."

[8]  COL 7 provides, "[Parents] are not presently willing and able to provide [EA] with a safe family home, even with the assistance of a service plan."

to visit him in prison, and Father could sexually assault EA once he was released.

Tawata testified Mother's failure to complete a clarification session with EA (telling EA why she was removed from Parents, addressing in an age-appropriate manner Father's sexual abuse of TM, and explaining that Parents were responsible for what had happened) put EA at a greater risk of harm resulting from Father's sexual assault of TM. The session was designed to help EA process the trauma, not blame herself or feel guilty, and assure her that Mother would "make things right." Without a completed clarification session, Tawata did not support reunification.

Imakyure testified that, therapeutically speaking, EA was a secondary victim of Father's sexual abuse of TM and could be harmed by Father. Mother's failure to recognize that Father, an untreated sex offender, posed a risk of harm to EA, and Mother's pattern of giving Father access to EA showed Mother was not protective of EA. Mother misinformed EA that EA should not trust Imakyure and should hide from Child Protective Services, and this caused EA to be confused and could make her afraid to disclose any future harm to DHS. Further, because Mother had not completed services, once Father was released from prison, Mother would be blind to any signs of sexual abuse by him.

Mother was clinically discharged from non-offender sex abuse treatment for nonparticipation and had not shown an ability to minimize her denial of Father's sex abuse of TM and the resulting risk of harm Father posed to EA.

To demonstrate she could be a protective parent, Mother needed to make progress in therapy, start the clarification sessions, build a safety plan, and prohibit Father from living in the family home with EA, none of which Mother had done.

Based on Tawata's and Imakyure's testimonies, which the First Circuit Family Court found credible, see In re Doe, 107 Hawai'i at 19, 108 P.3d at 973 (2005), as well as the family court's uncontested FOFs, there was sufficient evidence to support the First Circuit Family Court's conclusion that Mother

was unwilling and unable to provide a safe family home. FOFs 54, 63, and 66 are not clearly erroneous, and COL 7 is not wrong.

### C. Sufficient evidence supports the conclusion that the Permanent Plan was in EA's best interests.

Mother argues the First Circuit Family Court erred by concluding the Permanent Plan dated January 18, 2018 was in EA's best interest because Paternal Grandmother initially asked the family court to close the case and allow EA to live with Parents, Paternal Grandmother told EA Mother was a liar, EA is strongly bonded to Mother, and Mother is a very good parent and has good parenting skills. FOF 60[9] and COL 10[10] are directly related to this argument.

After weighing the evidence, the First Circuit Family Court concluded the Permanent Plan was in EA's best interests because Mother was unable and unwilling to provide EA with a safe family home, whereas Paternal Grandparents met "all of [EA]'s physical, medical, emotional, and psychological needs" and had bonded with EA, and EA was doing well in her placement with them. We decline to pass upon the family court's weight-of-the-evidence determinations. See In re Doe, 107 Hawaiʻi at 19, 108 P.3d at 973. FOF 60 is not clearly erroneous, and COL 10 is not wrong.

### D. Mother was not deprived of her right to counsel.

The Third Circuit Family Court did not deprive Mother of her right to counsel.

Mother argues the Third Circuit Family Court deprived her of her right to counsel by granting DHS's Ex Parte Motion for Foster Custody, filed August 17, 2016, without holding a hearing or appointing her counsel. We disagree. In accordance with HRS § 587A-15(a)(2) (2018)[11], DHS filed a Notice of Placement in

---

[9] FOF 60 provides, "The Permanent Plan dated January 18, 2018 is in the best interests of [EA]."

[10] COL 10 provides, "The Permanent Plan dated January 18, 2018, is in the best interests of [EA]."

[11] HRS §587A-15(a)(2) provides, in relevant part:

[§587A-15] Duties, rights, and liability of authorized agencies. (a) If an authorized agency has family supervision, it has the following duties and rights, subject to such conditions or restrictions as the court deems to be in the best interests of a child:

Foster Care on August 17, 2016, indicating DHS had placed EA in foster care on August 16, 2016. On August 17, 2016, DHS also filed the Ex Parte Motion for Foster Custody, but the motion appears to have been superfluous and Mother cites to no authority to support her contention that the family court was required to hold a hearing on it.

In accordance with HRS § 587A-15(a)(2)(B) (2018), the Third Circuit Family Court set a review hearing for August 23, 2016, within ten days after DHS filed the Notice of Placement in Foster Care. At the hearing, Mother requested appointment of counsel. After Mother submitted her income information in an Application for Court-Appointed Counsel, dated August 24, 2016, the family court appointed Mother counsel, in accordance with In re T.M., 131 Hawai'i 419, 436, 319 P.3d 338, 355 (2014), effective August 29, 2016. At a periodic review hearing on August 30, 2016, Mother was represented by counsel.

### The First Circuit Family Court did not deprive Mother of her right to counsel.

Mother argues the First Circuit Family Court deprived her of her right to counsel by refusing to continue the hearing held on October 10, 2016, where the family court had not appointed counsel Herbert Hamada (Hamada) to represent Mother until less than two hours prior to the hearing, and Hamada had not reviewed all of the documents submitted in the case.

At the October 10, 2016 hearing, Hamada moved for a continuance on the grounds that there was no need to make any orders that day and he required more time to review the case. The family court denied the motion. Counsel for DHS explained it could not locate EA and asked the family court to order Parents to produce her. Hamada argued there was an inadequate basis for removal of EA from Mother. However, the Third Circuit Family

---

. . .
(2) Placement of the child in foster care and thereby assuming temporary foster custody or foster custody of the child. The authorized agency shall immediately notify the court when such placement occurs. Upon notification, the court shall set the case for:
. . .
(B) If jurisdiction has been established, a periodic review hearing within ten days of the child's placement.

Court had ordered foster custody of EA to DHS, and Mother's extended visitation with EA had expired on September 9, 2016. It appears DHS's authority to remove EA from Mother was not at issue.

At the hearing, the First Circuit Family Court ordered Parents to produce EA by 2 p.m. and remain in the courthouse. Parents left the courthouse, in violation of the order, and the family court issued a warrant for their arrest. Parents never produced EA. The police eventually located EA, who was with Mother, and removed EA from Mother's custody. Mother has not demonstrated her violations of the family court's orders were the result of any ineffective assistance by Hamada.

Mother has failed to show any inadequacy on Hamada's part resulting from the denial of the motion for a continuance, nor how any inadequacy prejudiced Mother to the extent that she was denied a fair hearing. See In re RGB, 123 Hawai'i 1, 25, 229 P.3d 1066, 1090 (2010); State v. Torres, 54 Haw. 502, 504-05, 510 P.2d 494, 496 (1973).

Therefore, IT IS HEREBY ORDERED that the Order Terminating Parental Rights, filed on August 30, 2018 in the Family Court of the First Circuit, is affirmed.

DATED: Honolulu, Hawai'i, April 12, 2019.

On the briefs:

Herbert Hamada
for Mother-Appellant.

Scott D. Boone,
Julio C. Herrera
and Erin K. Torres
Deputy Attorneys General
for Appellee DHS.

Presiding Judge

Associate Judge

Associate Judge

7